KAPLAN et al. v. SWARTZ.

SWARTZ v. KAPLAN et al.

Circuit Court of Appeals, First Circuit.
December 27, 1927.

Nos. 2117, 2131.

Contracts ⬗229(2)—Plaintiff held entitled to agreed percentage of actual profit made on sale of realty, though profit was substantially larger than anticipated.

Plaintiff contracted to sell a building to defendants for $12,830, above the mortgages thereon. Later he received an offer of $25,000, above the mortgages. He told defendants of the offer, and on their agreement to pay him 40 per cent. of the profit realized if they made a sale to him, named the party. Defendants made the sale but at a substantially larger profit. *Held* that plaintiff's recovery was not limited to 40 per cent. of the difference between $12,830 and $25,000, but that he was entitled to 40 per cent. of the profit actually made.

In Error to the District Court of the United States for the District of Massachusetts; Elisha H. Brewster, Judge.

Action by Fred M. Swartz against Samuel Kaplan and others. To review the judgment, both parties bring error. Judgment vacated, verdict set aside, and cause remanded for new trial.

Francis M. Carroll, of Boston, Mass. (John T. Storrs, of Ware, Mass., on the brief), for Samuel Kaplan and others.

Elisha Greenhood, of Boston, Mass., for Fred M. Swartz.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. This is an action of contract brought by the plaintiff, a citizen of Rhode Island, against the defendants, citizens of Massachusetts, to recover a share of profits arising out of the sale of certain real estate in Gardner, Mass., known as the "Theater and Hotel Block." The first two counts are for a broker's commission. The third count, which is the only one involved here (the jury having been directed that the plaintiff could not recover on either of the first two counts), is on a contract said to have been made June 13, 1924, whereby the defendants are alleged to have agreed to pay the plaintiff 40 per cent. of the profits, which would accrue to them from a sale of the property to a certain person or concern or to any person acting for such person or concern, in consideration of the plaintiff's disclosure of the name of the person and concern and the introduction of the defendants to such person, to enable the defendants to deal with the person or concern as a buyer of the property. The answer was a general

23 F.(2d)—18

denial. At the close of its charge to the jury, the court submitted the following questions:

"(1) Did the defendants enter into any contract with the plaintiff whereby they agreed to pay a percentage of the profits derived from the sale to Ripley or to the Giles Company of the Gardner real estate involved in this suit?

"(2) If you answer 'Yes' to the first question, which of the following contracts did the defendants enter into:

"A. A contract to pay 40 per cent. of the profits derived from a sale at $25,000 above mortgages? or—

"B. A contract to pay 40 per cent. of all profits derived from any sale which the defendants might thereafter make to Ripley or Giles Company?

"(3) What were plaintiff's damages resulting from a breach of the contract designated by the letter 'B'?"

After the jury had had the matter under consideration for six hours, they came into court and reported that their answer to the first question was "Yes," but that they had so far been unable to agree upon the other questions. The court thereupon instructed the jury that "the contract established by the plaintiff's evidence only obligated the defendants to pay 40 per cent. of $12,170, the difference between the price which the defendants were to pay for the property and the price which Ripley had agreed to pay under his written agreement with the plaintiff, and this 40 per cent. with interest from the date of writ to-day amounts to $5,161.30. You may, therefore, in view of your disposition of the first question, return a verdict for the plaintiff for the sum of $5,161.30." To this ruling and direction of a verdict, both the plaintiff and defendants excepted. A judgment having been entered on the verdict, the plaintiff and the defendants prosecuted these cross-writs of error.

The defendants in their assignments of error complain that the court erred in denying their requests for rulings, but, as each one of them relates in whole or in part to the first two counts, upon which the plaintiff was not permitted to go to the jury, they were properly denied.

The questions presented by the remaining assignments of both plaintiff and defendants, except as to the admission of a piece of evidence, are whether the court erred: (1) in directing the jury to return a verdict for the plaintiff for $5,161.30, that being 40 per cent. of the difference between the price the defendants had agreed to pay the plaintiff

for the property and the price which Ripley had agreed to pay him for it, plus interest from the date of the writ; and (2) whether there was any substantial evidence from which the jury could find, if there was an agreement to share the profits, that the agreement was for 40 per cent. of the difference between the price which defendants were to pay for the property and the price which Ripley had agreed with the plaintiff to pay him under his written agreement.

The only evidence being upon the question, as to whether there was an agreement between the plaintiff and the defendants to share the profits to be derived from a sale of the property, and, if so, what its terms were, was given by the plaintiff and his witnesses. The defendants denied the making of any contract. The evidence was that on March 6, 1924, the plaintiff made a written agreement with the defendants to sell them the property (subject to an unexpired lease of a part of the property to the Giles Company, of which Ripley was general manager) for $12,830 over existing mortgages then on the property, papers to pass May 1; that later in March, Ripley, ignorant of the March 6th agreement, called on the plaintiff to obtain an extension of the lease for his company; that the plaintiff informed Ripley of his agreement with the defendants, but that there was a question whether they were going through with it; that, as a result, the plaintiff, on April 1, 1924, entered into a written contract with Ripley (he acting for the Giles Company) to sell the property for $25,000 over the mortgages, conditional on the defendants' delivering an instrument showing that they had no claim upon the property on account of their agreement with the plaintiff; that, because of attachments put upon the property in April, the transfer of the property to the defendants was delayed until July 1; that at an interview between the plaintiff and the defendants on June 13, before the transfer on July 1 was had, negotiations took place, which are the subject to this controversy; that at that time the plaintiff opened the interview by saying that he knew a man working for a large concern, who was interested in buying the property, that he could get for the defendants a handsome profit, that the man was willing to pay $25,000 above the mortgages; that, after discussing the percentage of profit the plaintiff should receive out of the transaction and agreeing that it should be 40 per cent., the plaintiff said, "before I tell you the name of the man * * * I want it understood that I am to get 40 per cent. of the profits whenever you will sell to either the firm or the man"; that, this being understood, he disclosed the name of Ripley, representing the Giles Company; that he told them that Ripley had come to him on a lease proposition; that he said he had sold the building to the defendants and that he (Ripley) should talk with them; that he also said he had told Ripley he did not think the defendants would go through with the deal, and he thought he could turn the deal his (Ripley's) way if they gave him an offer; that the defendants said, "Yes; that is a good proposition, we will sell." The plaintiff also testified that he "did not disclose the name of Ripley or the Giles Company until after the defendants agreed to pay * * * [him] 40 per cent. of the profits of any sale made to one or the other" of the parties he had mentioned; that, in the defendant's presence, he called Ripley over the phone about meeting the defendants and doing business directly with them; that a time and place of meeting was agreed upon for the following Monday; that at the time and place agreed upon the parties met, and he introduced the defendants to Ripley; that no agreement was made with Ripley on that day; that between July and September 18th negotiations were carried on between the defendants, Ripley, and the Giles Company, resulting in a written sale agreement, pursuant to which on October 1 the defendants deeded the property to the Giles Company for $240,000, and a 20-year lease to the defendants, at $300 a month, of two stores on the property.

It was undisputed that the defendants had paid $9,214.88 in remodelling the two stores, and that the profit on the sale (not taking into account the value of the 20-year lease) was $55,000 less the above expenditures, or $45,785.12.

In view of this evidence, and other evidence of the same nature in its support, we think the court erred in directing a verdict for the plaintiff for 40 per cent. of the $12,-170. And, while it is unnecessary to a decision of this case, it seems to us that there was no evidence submitted from which a jury would be warranted in finding that the profits out of which the plaintiff was to receive his percentage was the difference between what he was to receive from the defendants and what Ripley had agreed previously to pay him for the property; that the agreement, if there was any, was to pay the plaintiff a percentage of the profits derived from a sale by the defendants to Ripley or the Giles Company, whatever that might be over

and above the price the defendants paid the plaintiff for the property.

In this situation it is unnecessary to pass on the question of evidence; it may not arise at another trial.

The judgment of the District Court is vacated, the verdict is set aside, and the case is remanded to that court for a new trial, with costs to Swartz.