**KAPLAN et al. v. SWARTZ.**

No. 2442.

Circuit Court of Appeals, First Circuit.

June 5, 1930.

Francis M. Carroll, of Boston, Mass. (John T. Storrs, of Ware, Mass., and Leon R. Eyges, of Boston, Mass., on the brief), for appellants.

Elisha Greenhood, of Boston, Mass., for appellee.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

BINGHAM, Circuit Judge.

This is the same case that was previously before this court on cross-appeals in 23 F. (2d) 273, and which was remanded for a new trial because of error in the instructions on the question of damages.

At this trial, as at the former one, the trial was had upon the third count and not upon the first two, which were for a broker's commission. The third count sets out a contract, said to have been made June 13, 1924, wherein the defendants are alleged to have agreed to pay the plaintiff 40 per cent. of the profits which would accrue to them from a sale of certain real estate in Gardner, Mass., known as the "Theatre and Hotel Block," to a certain person or concern or to any person acting for such person or concern, in consideration of the plaintiff's disclosure of the name of the person and concern and the introduction of the defendants to such person, to enable the defendants to deal with the person or concern as a buyer of the property. The answer at this trial, as at the former, was a general denial. No special plea of any sort was filed. At the close of all the evidence the defendants' motion for a directed verdict was denied, subject to exception. The jury, on November 16, 1928, returned a verdict in favor of the plaintiff. December 10, 1928, the defendants filed a motion for a new trial on the ground of newly discovered evidence. July 8, 1929, this motion was denied, but "without prejudice to the right of the defendants to renew it at a later date if investigation shall establish that the verdict was clearly wrong." At the same time the court stated that the verdict ought not to be set aside on the evidence presented, especially in view of the fact that two juries had accepted the plaintiff's story against that of the defendants. "The case reeks with perjury I do not doubt; and I shall call it to the attention of the United States Attorney."

It appears that the defendants prepared a bill of exceptions, intending to prosecute an appeal in this court, and that the plaintiff, on October 14, 1929, voluntarily filed a written stipulation, providing that the District Court, "regardless of technicality, and in any form, may entertain a renewal of said motion in the event referred to in the above quoted order, at any time up to one month after the time for the necessary further proceedings in the case, after mandate from the Circuit Court of Appeals upon such writ of error." October 15, 1929, the District Court ruled that, upon the filing of the stipulation, the appeal was to go forward without delay. The defendants excepted to the ruling allowing the plaintiff to file the stipulation and ordering the appeal to go forward without delay. Thereafter, on December 2, 1929, the District Court ordered judgment to be entered for the plaintiff on the verdict; and the defendants appealed.

The defendants have filed numerous assignments of error, many of which are not based on exceptions taken at the trial, and some on supposed happenings that did not in fact take place. Assignments of error are intended to inform opposing counsel and the court of the specific questions proposed to be raised, and, as to matters occurring during the course of the trial, should be based on exceptions taken at the time. There is no excuse for filing assignments of error such as are presented in this case.

During the trial the defendants made several requests for rulings, which were denied. These constitute Nos. 2, 3, 4, 5, 6, 7, 8, 9, and 10 of the assignments of error. No exceptions were taken to the refusal to give any of these rulings, except the one embodied in the seventh assignment. The twelfth as-

signment is to "limiting cross-examination of plaintiff's witnesses to matters alleged to have occurred on June 13, 1924, and after." The record contains no ruling of this character, to which an exception was taken. The fourteenth and fifteenth assignments are without any basis in fact, and necessarily no exception was or could have been taken to the matters set out in either of these assignments. As to the motion for a new trial, it is assigned as error that the court erred in not allowing this motion. But no exception was taken to the denial of the motion. The only exception was to the filing of the stipulation and to the order that the appeal should go forward without delay, which was a matter entirely within the discretion of the District Court. We shall therefore not consider the assignments relating to the motion for a new trial further than as above stated, nor assignments 2, 3, 4, 5, 6, 8, 9, 10, 12, 14, and 15.

The remaining assignments are that the court erred (1) in denying the defendants' motion for a directed verdict upon all the evidence; (2) in failing to rule that, "if the plaintiff seeks to hold himself out as a middleman he cannot recover if he did anything more than bring the parties together. If plaintiff urged defendants to sell to Ripley for $25,000 above the mortgages, he cannot recover"; · (3) in refusing to admit certain offers of proof by the defendants; and (4) in excluding certain other testimony offered by the defendants.

■ The denial of the defendants' motion for a directed verdict depends upon whether there was evidence from which the jury might reasonably find that on June 13, 1924, the parties entered into the contract alleged in count 3. This was one of the questions presented when the case was previously before us. We then reviewed the evidence and held that it was sufficient to warrant the submission of the case to the jury. At the present trial the same evidence was introduced as at the former one, and other evidence materially strengthening that previously submitted, and, such being the case, we are of the opinion that the defendants' motion was properly denied.

■■ The request for a ruling embodied in the second assignment was properly denied. The contract sued upon did not make the plaintiff a broker or middleman. He merely contracted to disclose names, furnish an introduction, and, in case of a sale by the Kaplans, that he should have a share of the profits. It did not impose a restraint upon him not to urge the Kaplans to sell to Ripley for $25,000 above the mortgages, or create a fiduciary relationship that would. Then again, the plea was the general issue, denying the making of the contract. The defendants did not confess the contract and plead its discharge by subsequent conduct. And, if they had, the subsequent conduct set out in their request would not operate to effect a discharge. In drawing this request, the draftsman no doubt had in mind the first two counts for a broker's commission, neither of which was submitted to the jury. When the case was previously here, the defendants assigned as error that the court erred in denying their requests for rulings, but, as each of them related wholly or in part to the first two counts (upon which the plaintiff was not permitted to go to the jury), as does the one here in question, we then held that they were properly denied. The same reasoning applies here.

■ The third assignment, being No. 11 as numbered by the defendants, involves the propriety of the exclusion of two offers of proof. The first offer is that contained in No. 11 (e), and is as follows:

"(e) That following the making of the agreement on March 6 with the Kaplans [the agreement to sell the hotel property to the Kaplans], and then further following the agreement that was made with Mondshein and Ripley with Mondshein, acting for Swartz, on the first of April, that is the written contract which is here [the April 1 agreement is not the one of June 13, here sued upon], that thereafter Swartz either personally or through others conducted a campaign, or used efforts to try to get the Kaplans to surrender their contract without disclosing to them the fact that he had a written agreement [April 1, contract with Ripley] that would enable him to transfer the property to a purchaser at a higher figure than the Kaplans were going to pay; and that such efforts consisted of talking down the property, calling attention to its defects, that it would be a losing proposition to them, and finally culminating in the advice that the gentlemen do not go through with the deal."

Subdivisions (b) and (c) relate to the same subject-matter as subdivision (e), above stated, and should be considered with it. They read as follows:

"(b) That as soon as the plaintiff had obtained the written agreement [of April 1] from Ripley to pay $197,170 for the property, that thereafter Swartz began a campaign to frighten the Kaplans out of the deal. Feinberg came to the Kaplans and told

them of defects in the building; that it had been a losing proposition for Swartz and that it was a lemon; that he advised the Kaplans to drop the bargain.

"(c) That Swartz urged the Kaplans prior to June 13, 1924, to give up the deal and accept other properties instead; that Swartz stated the property was not paying; that it was a losing deal, and that the Kaplans had better surrender; that something had happened which he could not go into but which would prevent him from transferring the property to the Kaplans."

It will be noted that all these offers contemplate the introduction of testimony concerning talk had between Swartz, or his alleged agent, and the Kaplans, all of which was had long prior to June 13, 1924, when the contract in issue in this case was made. It is also to be borne in mind that the matters to which the talk related had been ruled out as immaterial and irrelevant to the issue being tried. None of the matters embodied in these offers had any reasonable tendency to prove that Swartz and the Kaplans on June 13, 1924, did or did not enter into the contract here sued on. The court, in amplifying its rulings on these offers, stated that the defendants could show the facts and circumstances existing prior to June 13, but not the conversations and negotiations, except that relating to the telephone talk had two days before June 13, when the arrangement for the June 13th meeting was made. We think the District Court did not err in thus limiting these offers of proof.

The remaining portion of the second offer of proof reads:

"(a) That the name of Mondshein as the contracting party with Ripley under date of April 1st was suggested by Solomon Mondlick, attorney for Swartz, who told the attorneys for Ripley that Swartz had transferred the property to Mondshein."

"(d) That on the thirtieth day of April, the day before the property was to be transferred, Swartz caused or instigated a collusive attachment by Feinberg in the sum of $10,000 and that he offered this attachment as an excuse in part for not being able to transfer to the defendants."

These offers of proof were also excluded so far as they embodied conversations had prior to June 13th, the date of the contract in suit, as immaterial and irrelevant to the question in issue. All these conversations took place prior to that time. We think that they were properly excluded, the same as the conversations embodied in the prior offer were. Moreover, the offer embodied in subdivision (a) was with a view to contradicting an immaterial matter brought out by the defendants in the cross-examination of one of the plaintiff's witnesses. Testimony educed upon cross-examination as to an immaterial matter is not open to contradiction. Wilson v. Daniels, 257 Mass. 234, 153 N. E. 561; Willard v. Sullivan, 69 N. H. 491, 45 A. 400.

The fourth assignment, being No. 13 in the record, complains that the court erred in failing "to permit the defendants to offer evidence of acts or words tending to show the defendants had always desired to perform their agreement of March 6, 1924, with the plaintiff by purchasing the property involved." This assignment, if it has to do with anything in the nature of the exclusion of evidence in the course of the trial, and to which an exception was taken, concerns the following matter:

"Samuel Kaplan, Sr., one of the defendants, testified that on the first of May he was present at the Registry of Deeds with Mr. Murray, our attorney, 'with a certified check to pay for the title to the American House property.'

"Q. 1. How long did you stay at the registry on that day?

"Mr. Greenwood. Of what consequence is that, your Honor? the first day of May,—two months before.

"Mr. Carroll. Yes, it is.

"The Court. That is a pure waste of time. Proceed to the issue.

"Mr. Carroll. Your Honor will save my rights.

"The Court. There is nothing to it. I am saying it is too remote, and irrelevant, and a waste of time."

We do not think we can add anything to the discussion of this matter over what was said by the court below. No error was committed.

The judgment of the District Court is affirmed, with costs in this court to the appellee.