**MILLER NATIONWIDE REAL ESTATE CORPORATION and Krieger Nationwide Real Estate Corporation, Respondents,**

v.

**SIKESTON MOTEL CORPORATION, Appellant.**

No. 52283.

Supreme Court of Missouri, Division No. 1.

Sept. 11, 1967.

Robert A. Dempster, James R. Robison, Dempster, Edwards & Robison, Sikeston, for respondents.

Kenneth L. Dement, Sikeston, for appellant.

HENLEY, Presiding Judge.

This is an action in two counts by non-resident corporations to recover real estate brokers' commissions for securing for defendant, Sikeston Motel Corporation, one D. G. Granger as tenant-lessee of a Holiday Inn. Trial before the court without a jury resulted in judgment for plaintiffs for $22,670.76 on count one and for $416.67 on count two, or the total of $23,087.43. Defendant appeals.

On January 14, 1964, the two plaintiffs and defendant executed a memorandum of agreement reciting that plaintiffs and their associates, acting as consultants, had assisted in negotiating an agreement between Sikeston Motel Corporation, as the owner, and D. G. Granger, as the prospective tenant, for the lease of a Holiday Inn at Sikeston, Missouri. It was agreed that when the lease was executed by those parties defendant would pay to these consultants, as brokers' commissions: (1) $25,000.00, to be evidenced by a promissory note executed by defendant, payment of which was to be guaranteed by the endorsement of Plez Lewis & Son, Inc., and (2) five per cent of the monthly rental paid by Granger to defendant, payable monthly when received by defendant from Granger.

Thereafter, a lease for this Holiday Inn was executed by defendant and Granger. The provisions of the lease are not in issue and it was not offered in evidence. However, the testimony indicates that it was for a term of thirty years, with two ten-year options, at an annual rental of $100,000.00, payable in monthly installments.

On May 28, 1964 a contract designated "Partial Assignment of Rents and Agreement" was executed by plaintiffs, defendant, D. G. Granger, and one Kenneth J. Johnson, wherein it was recited that defendant had that day leased the Holiday Inn at Sikeston to Granger for a term of thirty years with options to renew as above indicated. This instrument further recited that plaintiffs and Johnson had been responsible for and had completed the negotiations for the lease; and that Johnson had theretofore assigned to plaintiffs his interest in defendant's indebtedness to the real estate brokers for these services. The contract further recited that defendant had paid plaintiffs $5,000.00 on the $25,000.00 brokers' commission; that defendant agreed to pay

plaintiffs the balance of $20,000.00 in forty-eight monthly installments of $469.71 each, beginning July 1, 1964; that defendant also agreed to pay plaintiffs monthly five per cent of the monthly rental received by it throughout the life of the lease.

On the next day, May 29, defendant executed its promissory note payable to these plaintiffs for the above balance of $20,000.00; the principal, and interest at six per cent per annum on the unpaid balance, was payable in forty-eight monthly installments of $469.71 each, beginning July 1, 1964. The note also provided for a reasonable attorney fee. Plez Lewis & Son, Inc., endorsed the note and was made a party defendant in this action, but plaintiffs dismissed as to this defendant after it was declared bankrupt.

Count one of plaintiffs' petition is for the balance of $18,132.80 allegedly due on the above-described note, and for interest and attorney fees. Count two is on the May 28 contract for five per cent of the monthly rental of $8,333.33 allegedly paid by Granger to defendant from June 1, 1964, through August, 1965. There is no evidence how much rent, if any, was paid by Granger to defendant. The evidence indicates that Granger probably defaulted at some point.

Defendant contended in the trial court, and contends here, that the January 14, 1964, contract executed by plaintiffs and defendant was void *ab initio*, and that both the promissory note and the May 28 contract flowing from it are void and unenforceable under Missouri law, because plaintiffs were not on any of those dates licensed by this state as real estate brokers. Defendant also contends that plaintiffs cannot maintain this action in the courts of this state, because they were engaged within this state in the business of real estate brokers and did not allege and prove that they were licensed real estate brokers or salesmen, or that they were real estate brokers licensed by the state of Missouri when the alleged cause of action arose.

Admitting that they are not licensed as real estate brokers by this state, plaintiffs contend that they are licensed brokers in their home states and as such they are entitled to recover on either of two theories. First, they contend they are entitled to recover, because they were associated in this transaction with a licensed Missouri real estate broker and the rights they seek to enforce are those assigned to them by the Missouri broker. Second, they contend that as licensed brokers in their respective home states they are entitled to recover in their own right, regardless of their association with a Missouri licensed broker and his assignment of his interest to them, because this was a single isolated transaction and in negotiating it they were not in reality engaged in the brokerage business within this state.

■ In this jury-waived action at law it is our duty to review the record de novo on both the law and the evidence as in suits of an equitable nature, make our own findings and conclusions as to the facts and law, giving due regard to the opportunity of the trial court to judge the credibility of the witnesses, but we may not set aside the judgment unless it is clearly erroneous. Civil Rule 73.01(d), V.A.M.R.; Hoover v. Whisner, Mo.App., 373 S.W.2d 176, 178 [3].

Plaintiff, Miller Nationwide Real Estate Corporation, is an Indiana corporation; Krieger Nationwide Real Estate Corporation is a Delaware corporation; both are regularly engaged in the real estate brokerage business and were partners in this transaction. There is no proof that either plaintiff is a licensed corporate real estate broker or salesman in the states of their respective residences. Phillip E. Miller, the only witness, testified that he is president of and owns all of the stock in Miller Nationwide, and that he "* * * considered Miller's Nationwide * * * and [himself] one and the same." He further testified that his office "* * * as a real estate man" is in Indiana, and that he is "* * * licensed in the State of Indi-

ana." He did not testify that either the plaintiffs or himself was a licensed real estate broker. Neither Miller nor the plaintiffs were licensed by this state as real estate brokers or salesmen at any time pertinent to this case. Plaintiffs and Miller have never advertised in this state as, or generally held themselves out to be, real estate brokers, dealers or salesmen in Missouri, and, so far as this record shows, this is the only real estate transaction they have ever engaged in within this state. Mr. Miller further testified that when they began the negotiations for this lease plaintiffs " * * * invoke[d] the services of a licensed real estate broker for the State of Missouri, * * * Mr. Kenneth Johnson;" that Johnson collected " * * * a fee in this case * * * " and made " * * * an assignment of his interest to * * * " plaintiffs. Kenneth Johnson is licensed by this state as a real estate broker. Mr. Miller did not testify as to the particular part Mr. Johnson played in this transaction, other than that his services were "invoked," that he collected a fee and assigned his interest. The contract dated May 28 sued on in count two, signed by Johnson, recites that defendant was indebted to Johnson and plaintiffs for their services in completing the negotiations for this lease, and that some time prior to that date Johnson had assigned his interest in that indebtedness to plaintiffs.

The January 14 memorandum of agreement between plaintiffs and defendant, the lease from Sikeston Motel to Granger, the contract dated May 28, and defendant's promissory note to plaintiffs were all executed in Missouri. The negotiations leading up to the execution of these instruments were conducted in this state. Defendant is a Missouri corporation and the real estate involved is located in this state.

Section 339.020 [1] provides that it shall be unlawful for any person or corporation, foreign or domestic, to act as a real estate broker or salesman without first procuring a license from the Missouri real estate commission. Section 339.090 provides that non-residents of this state may become licensed real estate brokers or salesmen by conforming to the conditions of Chapter 339, RSMo 1959, V.A.M.S. Section 339.170 makes it a misdemeanor to violate this chapter and provides for the imposition of a fine or imprisonment upon any person or corporation, or any officer or agent of such corporation, violating its provisions. Section 339.160 provides that no person or corporation engaged within this state or acting in the capacity of a real estate broker or salesman may maintain an action in the courts of this state for recovery of compensation for services rendered in leasing any real estate without alleging and proving that he or it was a licensed real estate broker or salesman at the time the cause of action arose.

In Schoene v. Hickman, Mo., 397 S.W.2d 596, 602 [11] this court cited with approval a decision of the St. Louis Court of Appeals in Gilbert v. Edwards, Mo.App., 276 S.W.2d 611, 616–617, wherein that court said that if Chapter 339 " * * * is designed solely to raise revenue and not for the purpose of rendering the calling otherwise unlawful, it is generally held that the right of a broker or agent to recover on an express contract for commissions is not defeated by his failure to take out a license thereunder, even though the statute is expressly prohibitory and imposes a penalty for violation. If the object of the statute is to protect the public by insuring the honesty and good behavior of brokers and agents, that is, if it is a police regulation, there can be no recovery if a license has not been procured prior to the rendition of the services sued for. 8 Am.Jur., Brokers, Sec. 154, p. 1076. [see also 12 Am.Jur.2d, Brokers, § 178, p. 918.]

\* \* \* \* \* \*

"It was the manifest intention of the Legislature of our state in enacting the pro-

---

1. All references to sections of statutes are to RSMo 1959 and V.A.M.S., unless otherwise indicated.

visions of Chapter 339 * * * to protect the public from the evils of fraud and incompetency. We hold the provisions of this Chapter to be an exercise of the police powers of the state. * * *"

"As stated above, the provisions of Chapter 339 are for the protection of the public and are an exercise of the police power of the state, and, therefore, plaintiff, who seeks shelter under an exemption provision of said Chapter, must present a clear case, free from all doubt, as such provision, being in derogation of the primary purpose of the Real Estate Agents and Brokers Law, must be strictly construed against the person claiming the exemption and in favor of the public. 33 Am.Jur., Licenses, Sec. 38, pp. 363–364."

■■ One purpose of Chapter 339 was to set apart the business of the real estate broker or salesman as distinct from occupations which by general acquiescence are pursued of common right without regulation or restriction, and to make illegal acts of the unlicensed in the real estate broker's field. In our judgment the legislative objective in closing the courts of this state to unlicensed brokers was to establish a policy so strong that neither a contract nor the unlawful efforts in its pursuit, nor its fruits, could provide the basis of pecuniary benefit to such broker. See Schoene v. Hickman, supra, 397 S.W.2d l. c. 602, [11], and authorities there cited; also see footnote 7 at l. c. 603.

Plaintiffs' contentions present questions of first impression in this state.

In connection with their first contention, plaintiffs argue that § 339.150 "* * * clearly contemplates and sanctions a situation such as this where a foreign broker may become associated with a licensed resident broker * * *" and recover on an assignment of the interest of the resident broker. They cite no authority in support of this position, other than § 339.150. That section provides that "No real estate broker shall pay any part of a * * * com-

mission * * * received by * * * [him] to any person for any service rendered by such person to the broker in * * * leasing * * * any real estate, unless such person is a licensed real estate salesman regularly associated with such broker, or * * * a person regularly engaged in the real estate brokerage business outside of the state of Missouri." Plaintiffs are regularly engaged in the real estate brokerage business outside this state.

■ Plaintiffs fail to recognize and understand the purpose and effect of § 339.150. Its purpose is to control and restrict the class of persons to whom a licensed broker may pay a part of his commission; it does not give those persons the right to bring or maintain an action in their own name against the customer. Gilbert v. Edwards, supra, 276 S.W.2d l. c. 618 [9, 10]; Schoene v. Hickman, supra, l. c. 603. To permit plaintiffs to maintain this action in their own name would require that we ignore § 339.020 making it unlawful for any corporation, foreign or domestic, to act as a real estate broker without being licensed as such by this state, and to ignore § 339.160 providing that no corporation engaged in this state in the business of a real estate broker shall bring or maintain an action in our courts without alleging and proving it is a licensed broker of this state. To permit foreign corporations, licensed or unlicensed in their home states, to maintain such action in our courts would be to permit them to do what the legislature has denied resident unlicensed corporations. Such was not the intent of the legislature.

In the face of this record, plaintiffs may not contend successfully that they were not engaged in the business of or acting as real estate brokers in this state; their "retaining" or "invoking the services" of a licensed resident broker and paying him a "fee" does not preclude or avert the conclusion that they were so engaged and acting. They found the customer at a Holiday Inn convention in Memphis; they began the negotiations; they are the only

named brokers in the January 14 contract; the note sued on is made payable directly to them only and they are the beneficiaries of the May 28 contract; Kenneth Johnson is not shown to have been present at any of the meetings of the parties at which negotiations were carried on leading to the successful culmination of the transaction, except the meeting on or about May 28, at which he signed his name to the contract bearing that date. In connection with the extent of Johnson's participation, plaintiffs assert in argument that it would be surprising if defendant's officers ever claimed to have gained the impression they were dealing with brokers licensed in Missouri. We conclude that plaintiffs were the dominant motivating force and parties negotiating this lease for their customer, the defendant; and that they were engaged in the business of real estate brokers in this state.

It would have been a simple matter for them to make their acts as such lawful by first procuring the license provided for non-residents by § 339.090. Without that license their acts were unlawful; their association with a licensed resident broker does not make their acts lawful.

Applying the law of Wisconsin where the statutes applicable to real estate brokers and salesmen are substantially the same as those of this state, the United States Court of Appeals for the seventh circuit in Reed v. Kelly, 177 F.2d 473, 474-475, held that a real estate broker licensed in Illinois could not maintain an action for broker's commission in the courts of Wisconsin for the sale of land in that state, because not licensed as a broker in Wisconsin. See also: Payne v. Volkman, 183 Wis. 412, 198 N.W. 438; Kemmerer et al. v. Roscher, 9 Wis.2d 60, 100 N.W.2d 314. For cases from other jurisdictions to the same effect, see: Tanenbaum et al. v. Sylvan Builders, Inc., 29 N.J. 63, 148 A.2d 176; Wasson et al. v. Hartt, Tex.Civ.App., 244 S.W.2d 258; Campbell v. Romfh Bros., Inc., Fla.App., 132 So.2d 466.

In support of their second contention plaintiffs cite Ressler v. Marks, 308 Pa. 205, 162 A. 666, 86 A.L.R. 638; Annotations, 86 A.L.R. 640 and 159 A.L.R. 274; § 339.010, subsection 3, RSMo 1959, V.A.M.S. They argue that although unlicensed in Missouri they are entitled to recover in their own right, regardless of their association with a licensed resident broker, because they were negotiating an isolated transaction and were not shown to be engaged in the real estate brokerage business in this state. Ressler v. Marks, supra, was an action by a New Jersey broker, unlicensed in Pennsylvania, to recover brokerage commissions for negotiating in the latter state an isolated real estate transaction. The trial court sustained a motion to dismiss on the ground that the procurement of a Pennsylvania broker's license was a condition precedent to a lawful transaction and to recovery of brokerage fees. The Supreme Court of Pennsylvania, finding that the case was not such a clear one as to permit disposition on the pleadings, reversed and remanded for trial, where, " * * * with all the facts developed, it can be seen whether the transaction * * * was an isolated one, or whether he was doing business in this state in violation of the provisions of our statutes." 162 A. l. c. 667. In the course of the opinion the court said: (1) if plaintiff were actually engaged in the real estate brokerage business in this state the trial court would be right; and (2) that the court was not prepared to hold that a single transaction would require plaintiff to procure a Pennsylvania license before he could recover. The annotations in 86 A.L.R. and 159 A.L.R., cited by plaintiffs, state that in the cases which have reached the conclusion that an unlicensed nonresident broker may recover where the transaction is an isolated one, the determining factor was whether the non-complying foreign broker was negotiating merely an isolated transaction or was in reality engaged in the brokerage business within the state.

Gilbert v. Edwards, Mo.App., 276 S.W.2d 611, an action by a Missouri resident not li-

censed as a real estate broker or salesman to recover from a licensed resident broker commissions the broker allegedly agreed to pay plaintiff for finding a buyer involved an isolated transaction. Plaintiff in that case contended, as plaintiffs contend in the instant case, that subsection 3 of § 339.010 expressly excluded him from the licensing provisions of chapter 339. Subsection 3 provides that the chapter shall not apply to any person " * * * who does not advertise or hold himself out to the public as a real estate broker or dealer and who might, occasionally, * * * sell * * * or lease any real estate * * *." The court said, 1. c. 617–618, that all sections of chapter 339 must be construed together to carry out the legislative intent, and that considering subsection 3 in the light of § 339.150 the contention would be denied. Tanenbaum, et al. v. Sylvan Builders, Inc., supra, involved an isolated transaction and the court, in construing statutes quite similar to ours, held that any single act in the execution of the authority to serve as a broker constituted engaging in the real estate brokerage business and required the actor to have a license. In Bickley v. Van Antwerp Realty Corporation (1960), 271 Ala. 117, 122 So.2d 275, the Supreme Court of Alabama interpreted its Real Estate License Law (Title 46, Code of Ala.), which is substantially the same as our chapter 339, as applicable to a single isolated transaction.

We hold that plaintiffs' acts in negotiating this transaction constituted engaging in the real estate brokerage business in this state and required that they have a broker's license issued by this state. Accordingly, their acts were unlawful and they may not maintain this action.

The judgment is reversed.

SEILER, J., and STORCKMAN, Alternate J., concur.

HOLMAN, J., not sitting.