William J. WHITE, Plaintiff-Respondent,

v.

MIRIAM REALTY COMPANY,
Defendant-Appellant.

No. 37545.

Missouri Court of Appeals,
St. Louis District,
Division One.

Feb. 1, 1977.

Warren W. Davis, Davis & Davis, Clayton, for defendant-appellant.

David G. Dempsey, Shifrin, Treiman, Bamburg & Dempsey, Clayton, for plaintiff-respondent.

WEIER, Judge.

Plaintiff William J. White brought suit against defendant Miriam Realty Company based on a written agreement with Miriam to pay White $3,300 as a finder's fee in a real estate transaction. The case was tried before a circuit court judge sitting without a jury. The court overruled defendant's motion to dismiss at the close of plaintiff's case and rendered judgment for plaintiff in the amount agreed upon by the parties. Miriam Realty appeals, contending the trial court erred in overruling its motion to dismiss because under the evidence White, who was never licensed as a real estate broker or salesman, was barred from recovering on this contract by § 339.160, RSMo. 1969, which reads as follows:

> No person, copartnership, corporation or association engaged within this state in the business or acting in the capacity of a real estate broker or real estate salesman shall bring or maintain an action in any court in this state for the recovery of compensation for services rendered in the buying, selling, exchanging, leasing, renting or negotiating a loan upon any real estate without alleging and proving that such person, copartnership, corporation, or association was a licensed real estate broker or salesman at the time when the alleged cause of action arose.

We affirm.

Over the past thirty years Mr. White had bought, sold and managed various rental properties on his own behalf. During this

period White owned a total of perhaps a dozen rental properties. He disposed of his last property in 1965 or 1966. Upon the sale of some properties, he took deeds of trust rather than cash. At the time of trial Mr. White's income came from payments on these deeds of trust and other investments. Other than the transaction with Miriam Realty Company White never attempted to put a real estate deal together without being a purchaser or seller. White was never licensed as a real estate broker or salesman.

In June or July of 1970 White saw a piece of property on South Jefferson Avenue in the City of St. Louis with a Miriam Realty Company "for sale" sign on it. White contacted the company and was referred to Ralph Sapot. White wanted to purchase the lot owned by Miriam Realty Company and two adjacent lots, with the intention of reselling them at a profit. Three contracts were prepared by White and submitted to Mr. Sapot but they were never executed by the owners.

Kenneth Baldridge, a licensed real estate broker, had previously told White he was interested in purchasing some property near Jefferson and Arsenal Streets. Baldridge acquired sites in the St. Louis area for several companies, including Burger Chef. White called Baldridge to inform him of the property on Jefferson Street. Baldridge was under the impression that White owned or had contracts on the property. When Baldridge found out White did not own the property he told White he had to deal directly with the owners because that was the policy on all Burger Chef deals. White brought Baldridge to Sapot's office and from this point on all negotiations were between Baldridge and the owners of the three lots. White did not participate in these negotiations. White also had nothing to do with satisfying contingencies in the contracts such as zoning requirements and building permits. Baldridge alone handled this.

In a conversation with Mr. Sapot, White informed Sapot that he was not a licensed broker or salesman. Baldridge was present during this conversation. White denied having held himself out to the public as a real estate broker or salesman and this was confirmed by Baldridge.

At some point Baldridge told Miriam Realty Company that he "couldn't sign a contract with them until they took care of Mr. White because he made the introduction to me." Miriam agreed to pay White $5,700 when the three lots were sold. On February 9, 1971, Miriam proposed to reduce White's payment to $2,700. After several conversations White agreed to accept $3,300. This offer was accepted by Miriam and a written agreement executed by Miriam. The three lots were sold to Baldridge on February 19, 1971. Following the sale, Miriam refused to pay plaintiff the agreed sum claiming such a payment was prohibited by Chapter 339, RSMo.1969.

The issue to be resolved is whether under the facts in this case White is a person "engaged within this state in the business or acting in the capacity of a real estate broker or real estate salesman . . ." (§ 339.160, RSMo.1969). Section 339.010, RSMo.1969, defines a real estate broker as:

any person, copartnership, association or corporation, foreign or domestic, who advertises, claims to be or holds himself out to the public as a real estate broker or dealer and who for a compensation or valuable consideration, as whole or partial vocation, sells or offers, for sale, buys or offers to buy, exchanges or offers to exchange the real estate of others; or who leases or offers to lease, rents or offers for rent the real estate of others; or who loans money for others or offers to negotiate a loan secured or to be secured by a deed of trust or mortgage on real property.

■ Concerning the first part of this definition, the trial court determined that White "did not advertise, claim to be or hold himself out to the public (or to Defendant or Baldridge) as a real estate broker or salesman, as defined in Section 339.010." This determination is supported by substantial evidence. Rule 73.01; *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo.banc 1976). Baldridge and Sapot both knew that White

was not licensed and there is no evidence that White had negotiated with anyone else. White and Baldridge also both denied that White had ever held himself out as a broker.

■ Within the second part of the definition of a real estate broker in § 339.010, RSMo.1969, we look not at labels such as "finder's fee" or "commission" but at the legal effect of White's role in this transaction. *Dolan v. Ramacciotti,* 462 S.W.2d 812, 815 (Mo.banc 1970). The phrase "who for a compensation or valuable consideration, as whole or partial vocation, sells or offers for sale, buys or offers to buy, exchanges or offers to exchange the real estate of others . . . ." (§ 339.010), contemplates an agency relationship where the broker acts for someone else. This conclusion is bolstered by the fact that brokers, in general, are considered agents (12 Am.Jur.2d Brokers § 1, p. 772; 12 C.J.S. Brokers § 1a, p. 5) and by § 339.040, RSMo.1969, which provides in part that "[a] license shall be granted only to persons . . . who are competent to transact the business of a real estate broker . . . in such manner as to safeguard the interests of persons *whom they represent* . . . ." (emphasis added). *See also, Timmerman v. Ankrom,* 487 S.W.2d 567, 570[2] (Mo.1972) (discusses the agency relationship of a real estate broker). In the case at bar, the trial court correctly determined that White "did not represent either party." He first worked for himself and later only brought the parties together. He was never employed by either party to find a buyer or seller and the agreement to pay him occurred only after the termination of White's activities in this transaction. *Dolan v. Ramacciotti, supra* at 816[6], where plaintiff "represented himself to potential lessees as having the ability and authority to solicit the lease" on behalf of the owner and was barred from any compensation, is clearly distinguishable.

■ Furthermore, even though the real estate licensing statutes are an exercise of the police power "to protect the public from the evils of fraud and incompetency," *Gil-bert v. Edwards,* 276 S.W.2d 611, 616–17 [5, 6] (Mo.App.1955), quoted with approval in *Miller Nationwide Real Estate Corporation v. Sikeston Motel Corporation,* 418 S.W.2d 173, 176–77 (Mo.1967), and "our courts have construed Chapter 339 very strictly, and have trenchantly turned aside various attempts to avoid or erode the provisions of Section 339.150 and 339.160," *Ingalls v. Neufeld,* 487 S.W.2d 52, 55 (Mo.App.1972), this purpose is not violated if White is allowed to recover on this contract after dealing only with licensed or experienced persons who were aware that he was not licensed. As the trial court noted, in such a situation "there is no danger of an unlicensed broker taking advantage of the public."

■ It is also significant that White did not participate in any negotiations between Baldridge and the owners once the buyer and seller were brought together. Based on a statute similar to Missouri's, California has long recognized an exception to the real estate licensing statutes where a person merely brings parties together so they may negotiate their own contract but does not himself participate in the negotiations. Such a person is not acting in the capacity of a real estate broker and need not be licensed. *Tyrone v. Kelley,* 9 Cal.3d 1, 106 Cal.Rptr. 761, 507 P.2d 65 (banc 1973) (good discussion and summary of the case law development of the finder's exception). *See also, Kaplan v. Swartz,* 41 F.2d 177, 179[5] (1st Cir. 1930) (not a broker when contract was only to disclose names and furnish an introduction for a share of the profits); 12 Am.Jur.2d Brokers § 1, p. 772; 12 C.J.S. Brokers § 1a, p. 5 (brokers are usually engaged in negotiations). *But see,* 24 A.L.R.3d 1160, 1172–74 (collects cases from different jurisdictions, some of which recognize a finder's exception and some of which do not). As pointed out in *Tyrone* at 72, the reasons for requiring persons to be licensed (the primary one of which is to ensure competency and integrity among real estate brokers) do not come into play "where the undertaking is merely to seek

out, locate, find and introduce a buyer, seller, borrower or lender to his counterpart or where negotiations and completion of the transaction are left completely to the principals. By enforcing the promise to pay a finder's fee we give effect to the policy of the enforcement of contracts in cases where the policy underlying the licensing statute does not directly apply."

■ It has long been the law in Missouri that where one who finds and introduces one person to another to afford the first party an opportunity to negotiate a business contract or arrangement, such as a loan, sale or purchase of property, real or personal, where all the necessary elements of a contract exist and the business deal is consummated, the finder is entitled to compensation. *Longmire v. Diagraph-Bradley Stencil Mach. Corporation,* 176 S.W.2d 635, 644 [1–5] (Mo.App.1944). Plaintiff here did not hold himself out to the public as a licensed broker. He only brought two parties together without representing either one and did not participate in negotiations. The trial court correctly determined that White was not "engaged within this state in the business or acting in the capacity of a real estate broker or real estate salesman" within the meaning of §§ 339.160 and 339.010, RSMo.1969, so that § 339.160 does not bar plaintiff from recovering on this contract.

The judgment of the trial court is affirmed.

CLEMENS, P. J. and DOWD, J., concur.