**Miles KING, Plaintiff-Appellant,**

v.

**Frank A. CLIFTON,**
**Defendant-Respondent.**

**No. 12514.**

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 10, 1983.

Motion for Rehearing or Transfer
Denied March 7, 1983.

Charles F. Kiefer, Jr., Daniel, Clampett, Rittershouse, Dalton & Powell, Springfield, for plaintiff-appellant.

Kenneth W. Johnson, Karenanne Miller, Hamra, Greene, Johnson & Sweeney, Springfield, for defendant-respondent.

HOGAN, Judge.

Plaintiff Miles King brought this action to recover the reasonable value of services rendered in connection with the sale of an apartment house in Springfield, Missouri. Admittedly unlicensed either as a "broker" or "salesperson" within the intent of § 339.010, RSMo 1978, as amended, Laws of Mo.1978, p. 612, plaintiff's theory was that he was nonetheless entitled to a "finder's fee." Defendant Frank A. Clifton filed a counterclaim. Plaintiff submitted his case to a jury upon quantum meruit and had a verdict in the amount of $15,000; the jury

found against the defendant on his counterclaim. Defendant timely filed an alternative motion for new trial or for judgment notwithstanding the verdict as permitted by Rule 72.01.[1] The trial court granted defendant's motion for judgment n.o.v. upon the specific ground that plaintiff failed to prove he was the efficient and producing cause of the sale. Following general practice, the trial court did not specifically rule on the alternative motion for new trial, although at least two of the assignments of error were directed to the trial court's discretion. Believing that a specific ruling on the motion for new trial was required for this court to comply with the duty imposed on it by Rule 84.14, and believing the trial court itself should rule on those questions addressed to its discretion, *Taylor v. F.W. Woolworth Co.,* 641 S.W.2d 108, 110–111[3] (Mo. banc 1982), we remanded the cause to the trial court for a ruling on the alternative motion. That court promptly complied with our request, and the appeal is now in a proper posture for orderly and complete review and disposition. Being convinced that the "submissibility error" is before us under the ruling in *Millar v. Berg,* 316 S.W.2d 499, 502–503 (Mo.1958), we state the evidence taken most favorably to the plaintiff. *Houghton v. Atchison, Topeka & Santa Fe Railroad Co.,* 446 S.W.2d 406, 408–409[1] (Mo. banc 1969); *Farmer v. Taylor,* 301 S.W.2d 429, 430[1] (Mo.App.1957). In this case, the evidence most favorable to the plaintiff came from the plaintiff himself.

In "early 1979" plaintiff Miles King lived in Tulsa, where he worked as an "oil lease broker." King was acquainted with the defendant. During a telephone conversation, Clifton told King he had been employed to sell several apartment houses and his contract permitted him to share his commission. Because he "[had] a lot of property [to sell]," Clifton offered to split the commission he would receive from the sale of the apartment house if King found a buyer.

By looking through the advertisements in the *Wall Street Journal* of January 26, 1979, King discovered that a San Francisco group called the Xarin Real Estate Corporation wanted to invest in income-producing property. King telephoned Xarin; Xarin sent a Mr. Foster to Springfield. Foster executed an assignable contract to purchase the property and tendered a draft in the amount of $10,000 as earnest money. King came to Springfield for the occasion and was present when the Xarin contract was executed on March 16, 1979. This contract was later "revised" because Xarin "wanted [some] changes made." As part of the modification, Xarin agreed to pay a broker's commission in the amount of $40,000. Half the commission was to be paid in cash, the other half by promissory note.

About 10 days before the sale to Xarin was scheduled to be consummated, Xarin repudiated the contract. King called Clifton and told him of Xarin's action. At Clifton's suggestion, King tried unsuccessfully to salvage the transaction. King contacted a Mr. Dufau in Los Angeles and sent him a copy of the Xarin contract together with a projection of the earnings and expenses which might be expected if the apartment house were purchased. King also contacted at least two other prospective buyers and showed them the apartment house in Springfield. King thought one of the prospective buyers had been sent by Mr. Dufau.

About May 12, 1979, Clifton telephoned King and advised him that he, Clifton, had entered into a contract with a buyer from California. Clifton asked King to come to Springfield. King did so, and met with Clifton in Clifton's office. King then "leveled with them ... and told them that the [Xarin] contract was not going to close, and in fact, [there was no] contract. We wrote a fresh, new contract." The "new" purchaser was one Michael D. White of Marina Del Rey [Los Angeles], California. This second contract was later revised, but is dated May 12, 1979.

1. References to Chapter 339, RSMo, are to that chapter as amended, Laws of Mo.1978, p. 612, effective August 13, 1978. References to rules are to Missouri Rules of Court (12th ed. 1981).

Early in June, shortly before the sale to White was scheduled to be closed, Clifton called King and "... told [King] ... that there was a great controversy about the commission, the mode of payment of the commission." The purchaser wanted to tender a promissory note; King and Clifton believed they "deserved some cash." Clifton agreed to let King "negotiate that part of the deal."

On June 12, King again came to Springfield. Mr. White, from the marina, was here with two associates, Ms. Atchison and Mr. Mulwitz. It began to appear that they, like Xarin, would repudiate their contract. Thereupon, according to King, he and Clifton spent "one to two hours" trying to persuade White, Atchison and Mulwitz to consummate the sale. They were successful and on June 13, 1979, the transaction was "closed." White and his associates agreed to pay a broker's commission in the amount of $40,000, "$10,000 in cash at [the time of closing], and $30,000 in promissory notes bearing 9 percent interest for two years." For whatever reason—King's testimony is not clear on the point—the purchasers executed two promissory notes payable to Clifton, and Clifton agreed to assign one of the notes to King "non-recourse." Clifton gave King a check for $5,000 and promised to endorse one of the notes and send it to King's office. The note was not sent, and this action followed.

■■■■ We have been obliged to consider the posture of the cause on appeal. At the close of the plaintiff's case, counsel for defendant moved orally for a directed verdict. We realize that a written motion for directed verdict is to be preferred, *Manley v. Horton,* 414 S.W.2d 254, 258[6] (Mo.1967), but inasmuch as this motion was made in open court and counsel's grounds were fully

stated there was no absolute requirement that the motion be in writing. Rule 55.-26(a); *Machens v. Machens,* 263 S.W.2d 724, 733[12] (Mo.1953). In addressing the court, counsel argued a good many points rather diffusely, but plainly put the enforceability of plaintiff's agreement in issue.[2] Counsel thereafter supplanted this oral motion with a written motion which is so general as to be a nullity. Thereafter, defendant chose to present evidence, and of course, in doing so, waived any error in denying the motion for directed verdict at the close of plaintiff's case-in-chief. *Polovich v. Sayers,* 412 S.W.2d 436, 438[2] (Mo.1967); *Hoevelman v. Reorganized School District R2 of Crawford County,* 452 S.W.2d 298, 300[2] (Mo.App. 1970). At the close of all the evidence, counsel for defendant renewed his motion for directed verdict, in general terms, and filed a written motion, again so general as to be nugatory. However, in his motion for judgment n.o.v. or for new trial, counsel specifically, by assignment No. 11, renewed his objection that the court should have directed a verdict at the close of all the evidence because the parties' agreement was unenforceable. The defendant has renewed this same objection in defense of the trial court's entry of judgment in his favor. So, even though the written motions for directed verdict were defective in that they did not include the grounds therefor, and were ineffective as motions, the defendant repeatedly raised the question of enforceability. The submissibility error was raised in the alternative motion for new trial or for the judgment n.o.v. and in defendant's brief, and the question whether plaintiff made a case for the jury will be reviewed. *Millar v. Berg,* supra, 316 S.W.2d at 502–503[3]; *Hoevelman v. Reorganized School District R2 of Crawford County,* supra, 452 S.W.2d at 300[2, 3]. And, in this connec-

**2.** [R. 71–72] "Now, you can't have an agreement if there's a contract, and you can't file a suit for a quasi-contract. Secondly, he alleges in his petition that at all material times in this case he was a licensed real estate broker in the State of Arkansas. The law is quite clear that he can't file any sort of a real estate commission under the—I don't care if he's a licensed broker. He can't claim part of the commission.

What they are trying to do is claim the reasonable value of his services. They're doing it while they say they have a contract, which under the law, *is not enforceable....*

THE COURT: Well, you may be correct. It may be a close question involved here, *but I don't think any of us want to have this case go up and come back and start all over again....*" (Our emphasis.)

tion, it is to be remembered that if the trial court's entry of judgment is supportable on any ground assigned in the alternative motion and carried forward in the brief, that judgment will be affirmed. *Brown v. Moore*, 248 S.W.2d 553, 556–557[4–6] (Mo. 1952); *Stix, Friedman & Co. v. Fidelity & Deposit Co.*, 563 S.W.2d 517, 521[3] (Mo. App.1978).

■ The contract pleaded and proved by the plaintiff was unenforceable. His whole theory of the case was that he was entitled to a "finder's fee." He himself so testified.[3] Nonetheless, plaintiff's conduct in effecting the sale of the apartment building falls squarely within the statutory definition of those activities which constitute acting as a real estate broker. Section 339.010.1(7) in terms includes a person who, for another and for a valuable consideration, and as a whole or partial vocation:

"Assists or directs in the procuring of prospects, calculated to result in the sale, exchange, leasing or rental of real estate."

Section 339.010.2 in terms defines a "real estate salesperson" as:

". . . [A]ny person, who for a compensation or valuable consideration becomes associated, . . . either directly or indirectly, with a real estate broker to do any of the things above mentioned . . . ."

So, in the most sanguine view of the plaintiff's evidence, he either acted as a "broker" or a "real estate salesperson" in procuring the sale of the apartment house, and by his own admission was not licensed as either at the time the sale was consummated. Even a casual reading of § 339.-010.1(7) demonstrates legislative intent to eliminate "finder's" or "business chance broker's" activity from the list of functions excepted from the operation of the licensure statute. So, while we have no quarrel with the holding of our colleagues at St.

Louis in *White v. Miriam Realty Co.*, 547 S.W.2d 184, 187–188[2–4][5][6] (Mo.App. 1977), the rationale of that case cannot be applied in the face of express statutory language intended to eliminate the exception there noted.

■ In any event, and even if the statute had not been amended, plaintiff's conduct was scarcely that of a "finder" or "business chance broker." The undertaking of such a broker is " 'merely to seek out, locate, find and introduce a buyer, seller, borrower or lender to his counterpart,' " leaving negotiation and completion of the transaction completely to the principals. *White v. Miriam Realty Co.*, supra, 547 S.W.2d at 188. King participated in this transaction most actively. He traveled from his office in Tulsa to Springfield several times, and not merely to introduce prospective purchasers to Clifton; plaintiff showed the property to several prospects and actively participated in the negotiation between the sellers and Mr. White and his associates. King's activity cannot be realistically characterized as that of a business chance broker when by his own testimony he acted as a zealous but unlicensed broker or salesman.

■ We do not agree with the defendant that plaintiff was not entitled to submit his cause in quantum meruit, nor do we believe the contract was "illegal" as distinguished from being unenforceable. Our courts have for many years held that when it is impossible to say with definiteness whether the plaintiff is counting upon an express contract or upon quantum meruit, he will be permitted to recover upon whichever of the two theories his evidence may warrant. *Johnson v. Estate of Girvin*, 414 S.W.2d 245, 248, n. 1 (Mo. banc 1967); *In re Hukreda's Estate*, 172 S.W.2d 824, 826[5] (Mo.1943). As between a special declaration upon contract and a general declaration upon one of

---

**3.** Upon cross-examination, defendant was interrogated as follows [R. 44]: "Q. Were you a licensed real estate broker at the time this transaction took place? A. No, I wasn't.
Q. Okay. Therefore you weren't entitled to have a real estate commission, were you? A.

That's right. Q. Are you telling the jury you are not asking for any real estate commission? A. *I am asking for a finder's fee.*" (Emphasis ours.)

the common counts, Count II of plaintiff's amended petition, upon which he submitted his cause, is nothing if not obfuscatory.

It should further be clearly understood that the record before this court is wholly insufficient to establish that the agreement—or arrangement—between the parties was illegal within the intent of § 339.-100.2(3), § 339.100.2(6) or § 339.170. Section 339.010.5 lists ten specific exceptions to the licensure requirement of § 339.020, and the language of §§ 339.010.1 and 339.010.2 suggests another. All we can determine from the evidence before us is that plaintiff was an "oil lease broker." Both this court and the trial court have been left to speculate whether he came within our statutory definition of a "real estate broker" or "real estate salesperson." Certainly the activity in which he engaged here in Missouri was either that of a broker or salesman, but whether he came within one of the express or implied exceptions is not shown.

 The sufficiency of the record to show that the parties' arrangement, contract or undertaking was illegal is, however, of no moment on this appeal. Unlike the courts of some other jurisdictions, our courts have repeatedly and unmistakably held that the provisions of Chapter 339 represent an exercise of the police power. *Miller Nationwide R.E. Corp. v. Sikeston Motel Corp.*, 418 S.W.2d 173, 176–177 (Mo.1967); *Sandbothe v. Williams*, 552 S.W.2d 251, 255[6] (Mo.App.1977); *Gilbert v. Edwards*, 276 S.W.2d 611, 616–617[6] (Mo.App.1955). A plaintiff who is not a licensed broker or salesman must both *plead* and *prove* that he comes within an exception contemplated by Chapter 339 before he can recover any compensation for services rendered, if those services fall within the statutory definition of the activities of a broker or salesman, whether he seeks recovery upon contract or in quantum meruit. *Dolan v. Ramacciotti*, 462 S.W.2d 812, 816[2] (Mo. banc 1971); *Sandbothe v. Williams*, supra, 552 S.W.2d at 254. Plaintiff was foreclosed from recovery by § 339.160, and the trial court should so have ruled.

To tidy up without belaboring an essentially simple appeal, we will note that we remanded the cause for ruling upon the alternative motion for new trial so we might dispose of the cause finally. The trial court did not enter judgment on the ground that the parties' agreement or undertaking was unenforceable, but as we have seen, its failure to reach the same conclusion we reach by the same route this court reached it is immaterial in the circumstances of this case. The defendant has had a judgment without error, and we have no discretion to remand. *Owings v. White*, 391 S.W.2d 195, 197–198[1–3] (Mo. banc 1965). The judgment is affirmed.

MAUS, P.J., and PREWITT, J., concur.